# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Armand Andreozzi,<br><br>    Petitioner,<br><br>v.<br><br>United States Parole Commission,<br><br>    Respondent. | No. CV-16-00669-PHX-DGC (BSB)<br><br>**REPORT AND RECOMMENDATION** |

    Petitioner Armand Andreozzi, who is confined in the Federal Correctional Institution-Phoenix where he is serving a sentence that was imposed in military court-martial proceedings, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, raising two grounds for relief.  (Doc. 1.)  On May 26, 2016, Respondent filed a response arguing that the Petition should be dismissed because Petitioner did not exhaust his claims.  (Doc. 13.)  Respondent alternatively argues that Petitioner's claims lack merit.  (*Id.*)  On July 11, 2016, Petitioner filed a reply in support of his Petition.[1]  (Doc. 14.)  After reviewing the briefing, the Court ordered supplemental briefing.  (Docs. 15, 17.)  The parties filed supplemental briefing in accordance with the Court's order.  (Docs. 16, 20.)  Petitioner also filed a motion for leave to amend.  (Doc. 21.)  For

---

[1] Petitioner's reply is untimely and he did not seek permission to file an untimely reply.  (*See* Doc. 4.)  However, in an abundance of caution, the Court will consider Petitioner's reply.  Petitioner's reply includes a motion to strike several documents from the record.  (Doc. 14 at 1-2.)  The Court denied that motion on August 8, 2016. (Doc. 15.)

the reasons below, the Court denies the motion to amend without prejudice, and recommends that the Petition be denied.

## I. Motion for Leave to Amend

After this matter was fully briefed, on October 7, 2016, Petitioner filed a motion for leave to amend. (Doc. 21.) Respondent opposes the motion on the ground that it fails to comply with the applicable Local Rule. (Doc. 22.) As set forth below, the Court denies the motion.

An application for writ of habeas corpus "may be amended or supplemented as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242. Petitioner needs the Court's permission to amend. *See* Fed. R. Civ. P. 15(a)(1) and (2). Petitioner must also comply with Rule 15.1 of the Local Rules of Civil Procedure. That rule provides, in relevant part, that:

> A party who moves for leave to amend a pleading . . . must attach a copy of the proposed amended pleading as an exhibit to the motion, which must indicate in what respect it differs from the pleading which it amends, by bracketing or striking through the text to be deleted and underlining the text to be added. The proposed amended pleading is not to incorporate by reference any part of the preceding pleading, including exhibits.

LRCiv 15.1(a).

Petitioner did not submit a proposed amended pleading and, therefore, did not comply with the applicable Local Rule. Because Petitioner did not comply with the applicable rule for seeking amendment, the Court denies the motion for leave to amend. Therefore, the Court considers the original Petition.

## II. Procedural Background

The pending Petition does not challenge the merits of Petitioner's court-martial proceedings. Therefore, Petitioner moved to strike from the record documents related to those proceedings. (Doc. 14 at 1-2.) Those proceedings provide context for Petitioner's claims that are before this Court and therefore, the Court previously denied the motion to strike. (Doc. 15.) The Court briefly discusses the court-martial proceedings.

### A. Court-Martial Proceedings and Sentences

On June 12, 1998, Petitioner was convicted of violating several provisions of the Uniform Code of Military Justice. (Doc. 13-1 at 2, 7.) Petitioner was sentenced to confinement for twenty-seven years. (*Id.*) On November 13, 1998, Petitioner pleaded guilty to charges in a second court-martial and was found guilty. (*Id.* at 7.) Petitioner was sentenced to confinement for fifteen years, to run consecutively to his sentence imposed in June 1998. (*Id.*) Petitioner was dishonorably discharged from the U.S. Army. (*Id.* at 8.) In accordance with a Memorandum of Agreement (MOA) between the U.S. Army and the Bureau of Prisons (BOP), in 2006, Petitioner was transferred to the BOP to serve his sentences. (*Id.* at 2.)

### B. Parole Proceedings

On April 29, 2008, the United States Parole Commission (the Commission) conducted an initial parole hearing for Petitioner. (Doc. 13-1 at 11-15.) At the time of the hearing, the Commission had received input from the victim of the first offenses. (Doc. 13-1 at 13.) The Commission calculated Petitioner's parole guideline range as 124-192 months to be served prior to parole, and ordered a presumptive parole date of December 1, 2013, after service of 190 months' confinement. (Doc. 13-1 at 17.) The National Appeals Board (the Board) corrected the parole guideline range to 124-190 months, and otherwise affirmed the Commission's decision on administrative appeal. (Doc. 13-1 at 20-22.)

On June 15, 2010, Petitioner received a statutory interim hearing, conducted by videoconference, before the Commission. (Doc. 13-1 at 23-26.) The Commission ordered no change in the previously-ordered presumptive parole date of December 1, 2013. (Doc. 13-1 at 27-29.) The Board affirmed this decision on administrative appeal. (Doc. 13-1 at 30-31.) On October 26, 2012, Petitioner received another statutory interim hearing before the Commission again conducted by videoconference. (Doc. 13-1 at 32-35.) The Commission ordered no change to the presumptive parole date. (Doc. 13-1 at 36-38.) Petitioner did not administratively appeal that decision.

1    In a February 1, 2013 notice of action, the Commission notified Petitioner that it
2  was reopening his case under 28 C.F.R. § 2.28(f), based on new adverse information.
3  (Doc. 13-1 at 39-40.) In a March 13, 2013 notice of action, the Commission clarified
4  that, by reopening Petitioner's case, it was rescinding the previous presumptive parole
5  date and scheduling a reconsideration hearing on the next available docket to consider
6  new adverse information. (Doc. 13-1 at 41-42.)

7    On June 15, 2013, the Commission conducted the special reconsideration hearing
8  by videoconference. (Doc. 13-1 at 43-47.) The hearing examiner reviewed with
9  Petitioner the new information that would be considered including victim statements, a
10 May 2, 2013 Disciplinary Hearing Officer finding for fighting, and Petitioner's
11 unsuccessful discharge from the sex offender treatment program on February 28, 2012.
12 (*Id.*) Petitioner indicated that he did not know that the victim would participate in the
13 hearing. (*Id.*) The examiner asked Petitioner whether he was prepared to proceed with
14 the hearing, and Petitioner responded that he was ready to proceed. (*Id.*) During the
15 hearing, the hearing examiner heard testimony from the victim of Petitioner's second
16 court-martial conviction, and the victim's father. (Doc. 13-1 at 44-45.) The victim
17 testified to suffering on-going trauma resulting from Petitioner's crimes, including Post
18 Traumatic Stress Disorder and depression. (*Id.*)

19   Based on the new information presented at the hearing, the Commission concluded
20 that Petitioner was not suitable for parole release, and ordered that he serve his sentence
21 until a fifteen-year reconsideration hearing in April 2023, or to the expiration of his
22 sentence, whichever came first. (Doc. 13-1 at 48-50.) This decision imposed
23 confinement above the guideline range. The Commission explained that its decision was
24 based on its findings that parole would deprecate the seriousness of Petitioner's offenses
25 and promote disrespect for the law, new information about the lasting impact and severe
26 impacts of Petitioner's violent acts on the victims, Petitioner's expulsion from sex
27 offender treatment, and his fight with another inmate:

28   > After review of all relevant factors and information, a decision above the guideline range is warranted because the

> Commission finds that your release on parole would depreciate the seriousness of your offenses and promote disrespect for the law. The Commission has received new adverse information in your case that leads to this conclusion. The highly aggravating factors to your offense behavior were previously considered at your initial hearing in April 2008 to set a release date at the top of your guidelines (190 months). However, the Commission was unaware of the lasting and severe impacts that your violent acts continue to have on your victim(s) even many years after the offense. In addition, you have been expelled from the Sex Offender Treatment program and recently engaged in a fight with another inmate.

(Doc. 13-1 at 49.)

Petitioner administratively appealed this decision to the Board. (Doc. 13-1 at 51-86.) Petitioner raised numerous issues, including whether the information considered at the hearing could be considered "new," and whether he had received appropriate notice of the hearing and material to be considered. (*Id.*) Petitioner did not raise the issues that he presents in the Petition. The Board affirmed the Commission's decision. (Doc. 13-1 at 87-89.)

The Commission ordered that Petitioner receive a statutory interim hearing in 2015. (Doc. 13-1 at 49.) Petitioner, however, waived this hearing on October 28, 2015, the date on which the Commission attempted to conduct the hearing. (Doc. 13-1 at 90-92.) As a result of this waiver, and Petitioner's failure to re-apply for a parole hearing, Petitioner has not received a hearing since June 2013.

### C. Habeas Corpus Proceeding in this Court

On March 9, 2016, Petitioner filed a petition for writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2241. (Doc. 1.) Petitioner raises the following grounds for relief: (1) Title 18 U.S.C. § 4208(e) and Petitioner's Fifth Amendment due process rights were violated when the statutory interim hearings in 2010 and 2012, and his reconsideration hearing in 2013, were conducted via teleconference, rather than in person (Ground One); and (2) Title 18 U.S.C. § 4208(g) and his Fifth Amendment due process rights were violated in 2013 when he did not have a personal conference with the examiner when he was denied parole (Ground Two). (Doc. 1 at 4-5.) Respondents argue

1 that Petitioner's claims are unexhausted and lack merit. (Docs. 13, 16.) Petitioner
2 disputes those assertions. (Docs. 14, 20.)

**II.     Exhaustion Requirement**

The Supreme Court has "acknowledged the general rule that parties exhaust prescribed administrative remedies before seeking relief from the federal courts." *McCarthy v. Madigan*, 503 U.S. 140, 144-45 (1992), *superseded by statute as stated in Booth v. Churner*, 532 U.S. 731 (2001). Exhaustion of federal administrative remedies is required as "'an expression of executive and administrative autonomy.'" *McKart v. United States*, 395 U.S. 185, 194 (1969). The Commission has established administrative procedures that apply to any decision to grant, rescind, deny or revoke parole. *See* 28 C.F.R. §§ 2.23-2.28. An appeal to the Board completes the Commission's administrative review process, and makes the Commission's decision final. *See* 28 C.F.R. § 2.26(c); *Weinstein v. U.S. Parole Comm'n*, 902 F.2d at 1451, 1453 (9th Cir. 1990).

The Ninth Circuit requires federal prisoners to exhaust administrative remedies before seeking federal court review of a Commission decision. *Weinstein*, 902 F.2d at 1453 (stating that "[j]udicial review of a decision of the Parole Commission is available under 28 U.S.C. § 2241 only after administrative remedies have been exhausted."); *Green v. Christiansen*, 732 F.2d 1397, 1400 (9th Cir. 1984) (recognizing that "exhaustion of administrative remedies is a prerequisite to the filing of a habeas corpus petition in parole matters"); *Ruviwat v. Smith*, 701 F.2d 844, 845 (9th Cir. 1983) (same). The exhaustion requirement may be excused if "(1) administrative remedies would be futile; (2) the actions of the agency clearly and unambiguously violate statutory or constitutional rights; or (3) the administrative procedure is clearly shown to be inadequate to prevent irreparable injury." *Terrell v. Brewer*, 935 F.2d 1015, 1019 (9th Cir. 1991).

Respondent asserts that Petitioner did not exhaust the claims that he raises in his Petition because he did not present them to the Board.[2] (Doc. 13 at 9.) The record

---

[2] Respondent also notes that Petitioner did not object to appearing by videoconference at his 2010, 2012, and 2013 hearings. (Doc. 13 at 8.)

reflects that although Petitioner appealed his parole determinations to the Board, he did not present the claims that are before this Court. (Doc. 13, Exs. 8, 13.) Petitioner does not dispute Respondent's assertion that he failed to exhaust his claims. (Doc. 14 at 6.) Rather, Petitioner argues that he was not aware of his claims until he researched the statutes and regulations in 2015. (Doc. 1 at 4; Doc. 14 at 6; Doc. 20 at 11.) He also argues that requiring exhaustion of remedies would be futile. (Doc. 14 at 6.)

Petitioner has not shown that any of the exceptions to the exhaustion requirement apply in his case. First, Petitioner has not shown that it would have been futile to raise before the Board the issues asserted in his pending Petition. Petitioner's 2009 appeals to the Board took place after the Sixth Circuit had issued its decision in *Terrell v. United States*, 564 F.3d 442 (6th Cir. 2009). In that case, the court considered the same challenge to the videoconference procedure that Petitioner presents, and concluded that videoconference parole hearings violate 18 U.S.C. § 4208(e). *Id.* at 449-55. Thus, *Terrell* potentially supports Petitioner's claim that a videoconference parole hearing violates his rights under 18 U.S.C. § 4208(e), and supports the conclusion that exhausting Petitioner's administrative remedies would not have been futile because the Board was likely aware of the decision, or the decision could have been presented to the Board, and the Board could have granted Petitioner relief. *Id.* at 449-55.

Second, after review of the briefing and supplemental briefing in this matter, the Court concludes that the Commission's challenged conduct in this case — holding Petitioner's parole hearings by video conference — does not clearly and unambiguously violate statutory or constitutional rights. Although *Tyrell* is non-binding case law potentially supporting Petitioner's argument, the Ninth Circuit has not addressed this issue. Furthermore, Respondent asserts well-supported arguments to refute that decision, which the Ninth Circuit could find persuasive.[3] Third, Petitioner has not asserted or

---

[3] Respondent argues that *Terrell* is based on an incorrect assumption that videoconference technology did not exist at the time §4208(e) was enacted and, therefore, this Court should not follow that decision. (Doc. 16 at 5-8.) Although Respondent's argument is well-supported, other courts in the Ninth Circuit have rejected that argument. *See Morrow v. U.S. Parole Comm'n*, 2012 WL 2877602, at * 1 (C.D. Cal. Mar. 20, 2012)

- 7 -

shown that administrative procedures were inadequate to prevent irreparable harm. Finally, Petitioner's failure to recognize his claims until 2015 does not satisfy any of the criteria for excusing exhaustion. *See Terrell*, 935 F.2d at 1019.

Because Petitioner did not exhaust his administrative remedies, this Court will not consider the merits of his claims.[4] *See Ruviwat* 701 F.2d at 845 (affirming dismissal of petition for writ of habeas corpus based on the petitioner's failure to exhaust his claim that the Parole Commission denied him a meaningful parole hearing and due process of law); *Martinez v. Roberts*, 804 F.2d 570 (9th Cir. 1990) (stating that "[f]ederal prisoners are required to exhaust their federal administrative remedies prior to bringing a petition for a writ of habeas corpus in federal court.").

### III. Conclusion

Because the Court concludes that Petitioner failed to exhaust his administrative remedies, the Court recommends that the Petition be denied on that basis and does not consider Respondent's alternative arguments for denying relief. The Court also recommends that the motion to strike be denied.

Accordingly,

**IT IS ORDERED** that Petitioner's motion for leave to amend (Doc. 21) is **DENIED** without prejudice.

---

(granting the petitioners' motion for a preliminary injunction to enjoin parole determination hearings by videoconference).

[4] Moreover, even if the Court considered Petitioner's claims and found them meritorious, it is unclear whether he would be entitled to relief. In October 2015, Petitioner was offered an in-person hearing, but declined that hearing. (Doc. 13-1 at 91.) Provided Petitioner remains incarcerated within the jurisdiction of the Ninth Circuit, any future parole hearings will be conducted in person pursuant to the settlement agreement between the Commission and the American Civil Liberties Union. *Morrow v. U.S. Parole Commission*, Case No. 12-CV-700-DSF (RZ), at docs. #33-1, 43 (C.D. Cal. Feb. 24, 2014). Pursuant to that agreement, the Commission agrees "not to reinstitute or otherwise conduct video conferencing of parole hearing for [federal] inmates who are incarcerated within the jurisdiction of the United States Court of Appeals for the Ninth Circuit, absent a) a material change in the applicable language of 18 U.S.C. § 4208(e), or b) a decision by the Ninth Circuit Court of Appeals or the United States Supreme Court holding that 18 U.S.C. § 4208(e) permits the Parole Commission to conduct parole hearings by video conference." *Id.*

**IT IS RECOMMENDED** that the Petition for Writ of Habeas Corpus (Doc. 1) be **DENIED**.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Court's judgment. The parties have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6 and 72. The parties have fourteen days within which to file a response to the objections. Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the District Court's acceptance of the Report and Recommendation without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

Dated this 1st day of November, 2016.

_____
Bridget S. Bade
United States Magistrate Judge